BANCO DE PUERTO RICO, ETC., Plaintiff and Appellee, v. JUAN BAUTISTA ARGUINZONI ET AL., Defendants and Appellants.

No. 7243.  Argued January 19, 1938.—Decided May 9, 1938.

*M. Guzmán Texidor* for appellants.  *C. Domínguez Rubio* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

The Banco de Puerto Rico brought this action, as liquidator of the Banco Comercial de Puerto Rico, on a promissory note for $1,033.34, signed by Juan Bautista Arguinzoni, Guillermo Colón, and Mateo Vázquez as joint debtors.  After the death of the party last named, his widow and his ten sons, eight of whom were minors, were sued.

In their answer the defendants admitted the existence of the promissory note but moved to dismiss the complaint on the ground that the debt had been extinguished by novation and by payment.

The case went to trial. It was admitted that Mateo Vázquez had died and that the defendants named Vázquez and María Ocaña were his heirs. The Banco de Puerto Rico proved that it was authorized to do business in the Island and was the judicial liquidator of the Banco Comercial de Puerto Rico. Later it presented in evidence the promissory note in question signed by Arguinzoni, Colón and Vázquez on September 5, 1931, payable on October 31 following, and the testimony of Diez de Andino to show that the note had passed to the Banco de Puerto Rico when it became the liquidator of the Comercial, that the Bank had made fruitless efforts to collect and that the amount of the debt was $1,033.34 principal and $289.34 interest at 12 per cent per annum up to February 28, 1934.

Guillermo Colón, one of the signers of the note, testified for the defendants. He said that the note represented the remainder of a debt which was secured by a mortgage note made by Juan B. Arguinzoni on which the Bank foreclosed; that he did not directly pay the amount of the promissory note, that the heirs of Mateo Vázquez had not paid it either, but that Juan B. Arguinzoni had paid it with the note on which the Bank foreclosed. And as documentary evidence the defendants showed:

That on November 25, 1930, Juan B. Arguinzoni signed a promissory note to bearer for $12,350 and an additional $500 for costs and secured it with mortgages on the following rural properties located in Cayey: one of 11½ acres *(cuerdas)*, another of 4½, another of 6, another of 6½, another of one, another of 10, another of 25, and another of 10, and on a house located in Cayey. On March 19, 1932, he gave the said note to the Banco Comercial de Puerto Rico in pledge to secure ten other promissory notes signed by him

and other persons amounting all together to $8,057.89 and including the one sued on in this action, that is, the one signed by Arguinzoni, Colón, and Vázquez for $1,033.34;

That on March 1, 1934, the date set for the sale at public auction before a notary of the promissory note given in pledge, at Guayama, Notary Celestino Domínguez Rubio before whom the sale was effected, executed a deed showing that the sale was advertised in the proper manner, that Arguinzoni was notified that Juana Desrivieres Lebrón appeared and bid $1,000 for the note in the name of the Banco de Puerto Rico, as liquidator of the Banco Comercial de Puerto Rico, which amount was to be applied to the $8,057.89 for which Arguinzoni pledged the note as security and that since no other bidder had appeared and no better bid had been made, the sale was closed and the bank's bid was accepted; and

That on March 14, 1934, the bank brought a summary proceeding to foreclose the mortgage executed as security for the promissory note for $12,350, but limited its claim to $6,350, which proceeding ended by adjudication of the mortgaged properties to the bank at public sale for the sum of $510, to be applied to the debt claimed.

On the above pleadings and evidence the court rendered judgment for the plaintiff and the defendants appealed to this court.

As may be seen from the preceding statement of facts, there is no question as to the existence of the promissory note on which the action is based. It was signed by the defendants and delivered to the bank. It represents the balance of a debt. This being so, the evidence of the bank showed a *prima facie* case in its favor.

Did the evidence of the defendants show the extinction in whole or in part of the obligation claimed? Let us see.

After the defendants had signed the note in controversy, one of them, Arguinzoni, signed the other mortgage note of which we have spoken and delivered it to the bank in pledge

to secure several obligations which he had contracted among which was the note on which this suit is based.

In our opinion there is no doubt that the old obligation of Arguinzoni was not novated by the new one. In order that an obligation may be extinguished by another which substitutes it, according to section 1158 of the Civil Code (1930 ed.), it is necessary that it should be so expressly declared, or that the old and the new be incompatible in all respects. And here it was not expressly declared that the new note should substitute the old, nor is the second obligation incompatible with the first. It was simply a matter of additional security.

The serious question to be studied and decided is that of the possible effect of the acts of the bank in proceeding to the sale of the second promissory note given in pledge, in becoming its owner, and finally in foreclosing on it.

Section 1771 of the Civil Code (1930 ed.) provides:

"A creditor to whom the debt has not been paid at the proper time may proceed, before a notary, to alienate the pledge. This alienation must necessarily take place at public auction, and with the citation of the debtor and the owner of the pledge, in a proper case. If the pledge should not have been alienated at the first auction, a second one, with the same formalities, may be held; and should no result be attained, the creditor may become the owner of the pledge. In such case he shall be obliged to give a discharge for the full amount of his credit."

That section is the same, insofar as pertinent to this case, as section 1872 of the Spanish Civil Code, in reference to which Manresa says in his "Commentaries":

"The section which is the subject of the present commentary provides a brief, economical and simple proceeding to recover a debt secured by a pledge, without excluding the precautionary measures which were inspired by the limitations and restraints provided by our old law.

"The reasoning which counsels the prohibition against the pledgee's immediately collecting his credit out of the pledged property without the intervention of the debtor is obvious and easily

understood since, aside from the violence to doctrine existing where a security title is converted into a dominion title without benefit of any explanatory special and proximate juridical act, as Mr. Sánchez Román says—Sánchez Román, Civil Law, second edition, vol. 4, p. 981—, mere good sense shows that it would be oppressive and prejudicial to the debtors if the creditor could freely appropriate the pledged property in payment of his credit, because, since the evaluation of the sufficiency of the security would always have to be left to the judgment or discretion of the creditors, their cupidity might lead them to take advantage of the circumstances and reject security offered in pledge unless there were a great difference between the real value of the thing pledged and that of the obligation secured by it, in the expectation of obtaining a considerable profit upon becoming owners of the same.

"It is a moral reason, then, which inspires the precept of this section which establishes as a fixed condition in every case the sale of the pledge at public auction and the necessary intervention of the debtor, whereby the prejudice to which the principal debtor as well as the owner of the pledge, in case the latter should be a third party, would otherwise be exposed may be avoïded.

"The power granted to the creditor to proceed to the sale of the thing pledged, in case his credit has not been paid in due course, is consistent with the object of the pledge which could not be attained otherwise. Because of that all legislations have considered the covenant forbidding the sale to be ineffective; but while this power is inherent in the contract itself, it is nevertheless indispensable, for the reason already stated, that in the alienation there be observed the said two requirements of the public auction and the citation of the debtor, since both constitute 'an essential formality of the alienations regulated by section 1872', as the General Direction of the Registries has expressly stated.

"If the pledge should have been made by one other than the owner, the owner should also be notified since the same reasons apply to him which demand the citation of the debtor.

"It remains for us to point out that while the section which we are examining refers to the extrajudicial sale, since it is necessary only to effect the sale before a Notary, this does not hinder the right which assists the creditor to bring legal action for payment of his credit and the sale of the pledge for that purpose, except that in such case the alienation is regulated by the provisions of the Law of Civil Procedure since the same constitutes a step in judicial pro-

ccedings, for which reason there was no necessity for any provision for that kind of sale in the Code inasmuch as it falls without the proper limits of substantive law.

"Accordingly, the pledgee has two means of collecting his credit in case it should not be duly paid, to wit: 1.—to bring the corresponding judicial action against the thing pledged, and 2,—to proceed extrajudicially to alienate the thing pledged at public auction before a Notary after citation of the debtor and the owner of the same if he should be a third party, which is the case to which the present section refers.

"According to its provisions if the pledge should not have been alienated at the first auction, a second may be held with the same formalities; that is, before a Notary and with the said citations; and in case no result should be attained, the creditor may become owner of the pledge, by adjudication in payment, which adjudication is the logical consequence of every judicial or extrajudicial auction in which there are no bidders; but then he will be obliged to give a discharge for the full amount of his credit, even though this amount may be larger than the value of the pledge." 12 Manresa, *Comentarios al Código Civil Español*, p. 400.

We agree entirely with the trial court that it is optional with the creditor to resort or not to resort to the sale before a notary. Manresa maintains this and the Supreme Court of Spain so held in its decisions of October 5, 1926 and May 12, 1927. But in our opinion since the bank elected such a sale, it was obliged to conform to the provisions of the law which authorizes it, and in accordance with them it could only become owner of the pledged property after the second auction, in which case its express duty was to give a discharge for the full amount of its credit.

The appellee maintains in its brief that when there is a purchase one auction is enough.

We do not agree with this interpretation of the law when, as in this case, the alleged purchaser is the creditor. Neither of the parties cites cases on the point nor have we found any ourselves, but in our opinion, as we have already said, if the creditor chooses the sale before a notary, he is obliged to follow the terms of the law and the law only authorizes

him to become owner of the .pledged property at the second auction and then upon giving a discharge for the full amount of his credit. If the creditor were granted the right to be a bidder at the first auction and as such to acquire the pledged property for an amount smaller than that of the credit secured by the same, to be applied to the said credit, the legislator's purpose would be defeated, because that would actually be recognizing the right of the creditor to become owner of the thing pledged by that other means, in violation of the express provisions of the statute.

In view of the circumstances under which the auction was held, the debtor could have asked that it be set aside. He did not do so. When an action for debt was brought by the creditor, he preferred to accept its validity, alleging the extinction of the obligation claimed by payment, that is, giving to what the bank called a sale at public auction of the pledged property the scope of having made the creditor the owner of the thing pledged, with the effect that the law itself provides, to wit, the obligation of giving a discharge for the full amount of its credit.

And in our opinion he is right. The creditor should stand by and suffer the consequences of his own acts. Let us suppose that instead of a promissory note the thing pledged had been a jewel and that the same thing that occurred here had happened. Would there be any doubt that the creditor upon acquiring the jewel had collected the debt? In our opinion none.

Having reached the foregoing conclusion, it is not necessary to study and decide the other question raised as to partial payment, that is, the point that in any case the part of the debt which the creditor admits has been collected should be prorated among all the obligations secured by the mortgage note given in pledge.

The judgment appealed from must be reversed and another rendered in its place dismissing the complaint, without costs.